UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HERMAN TAMRAT,

    Plaintiff,

v.

ADAM MARLOWE, et al.,

    Defendants.

Case No. 20-cv-07623-PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 29, 61, 67

Plaintiff, a former county detainee and current state prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983. He alleges that defendant deputies Marlowe and Tamayo used excessive force against him. Defendants filed a motion for summary judgment on the merits. Plaintiff filed an opposition and after viewing the video evidence, a second opposition. For the reasons set forth below, the motion for summary judgment is granted.

## MOTION FOR SUMMARY JUDGMENT

### Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence

of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

**Facts**

A review of the record indicates that the following facts are undisputed unless otherwise noted:

Plaintiff was booked into Sonoma County Main Adult Detention Facility ("MADF") on December 2, 2018, for assault with a deadly weapon. Motion for Summary Judgment ("MSJ") Percy Decl. ¶ 4. Plaintiff had an outburst in court on December 12, 2018, and was subsequently ordered to be taken in chains when appearing in court *Id*. ¶ 5; Ex. B. From that court date until the day of the incident in this case, June 9, 2019, plaintiff was housed in MADF's Administrative Segregation ("Ad. Seg.") housing unit. *Id*. ¶ 5.

On June 9, 2019, plaintiff was classified as a Level 3 inmate due to his high propensity for violence. *Id*. ¶ 6; Ex. B. As a Level 3 inmate, plaintiff was considered a high risk to safety and needed to be in restraints and to be accompanied by three correctional deputies when he was moved within the jail. *Id*. ¶ 6. Defendants Marlowe and Tamayo were familiar with plaintiff's classification level, and they were aware that plaintiff had several incidents with deputies in the six months before the June 9, 2019, incident. MSJ, Marlowe Decl. ¶ 3; Tamayo Decl. ¶ 4.

On June 9, 2019, Marlowe, Tamayo and nondefendant deputy Gosselin approached plaintiff's cell to conduct a clothing exchange. Marlowe Decl. ¶ 4; Tamayo Decl. ¶ 5. Plaintiff placed his hands through the food port and was handcuffed. Marlowe opened the door, and Tamayo and Gosselin escorted plaintiff away from his cell so that Marlowe could search it. Plaintiff began yelling, "I'm going to watch you search my cell. You can't touch my legal documents." *Id*.

When plaintiff was yelling, he began to pull away from Tamayo.  MSJ Tamayo Decl. ¶ 5, Ex. A Camera 2 1:07-1:17.[1]  Marlowe asked Tamayo to move plaintiff further away to the inmate phone area.  Tamayo Decl. ¶ 5.  When Tamayo and Gosselin attempted to escort plaintiff away from his cell, he was yelling, planting his feet, tensing his body and trying to pull away.  *Id*.; MSJ Ex. A Camera 1 1:11-1:17, Camera 2 1:07-1:17, Camera 3 1:12-4:01.  Gosselin and Tamayo took control of plaintiff and ordered him to follow instructions, but plaintiff continued to tense his body and plant his feet, resisting the deputies' efforts to lead him away from his cell.  *Id*.

Plaintiff was escorted to an alcove where inmate phones are located.  Due to plaintiff's resistance to being moved, Tamayo and Gosselin pushed plaintiff up against the wall to better control him.  Tamayo Decl. ¶ 6, Ex. A Camera 3 1:15-4:02, Camera 4 1:11-4:02, Handheld Camera 0:00-0:23.  Defendants were standing extremely still while with plaintiff.  Tamayo Decl. Ex. A Camera 3 01:15-4:02, Camera 4 1:11-4:02, Handheld Camera 0:00-0:23.  Marlowe followed them to the alcove and replaced Gosselin so that Gosselin could search the cell.  Tamayo Decl. ¶ 6, Ex. A Camera 3 1:15-4:02, Camera 4: 1:11-4:02, Handheld Camera 0:00-0:23.  Marlowe then radioed for medical staff to come and examine plaintiff's wrists because he noticed an abrasion.  Marlowe Decl. ¶ 6.  Marlowe was unaware that plaintiff had injured his wrist the day before this incident.  Percy Decl. ¶ 8, Ex. D.

Plaintiff began yelling to the other inmates, "They fucking me up."  Tamayo Decl. Ex. A Handheld Camera 0:18-0:22.  Plaintiff's yelling caused other inmates to yell and kick their doors.  Tamayo Decl. Ex. A Handheld Camera: 0:00-0:42.  Due to the yelling by plaintiff and the other inmates, Marlowe believed it was best to remove plaintiff from the area and decided to move plaintiff to just outside the unit.  Marlowe Decl. ¶ 7.

---

[1] Citations to Tamayo Decl. Ex. A refer to the video footage from the handheld camera and from surveillance cameras.  The court refers to the different numbered cameras that recorded the footage and the time stamp on the video player.  Only the handheld camera footage contains audio.

3

     While Marlowe and Tamayo escorted plaintiff from the alcove to the exit, plaintiff was limping, hopping on one leg and yelling at defendants.  Tamayo Decl. ¶ 8, Ex. A Handheld Camera 0:23-0:42.  Plaintiff then attempted to stop walking and at one point began to lower himself to the floor, but defendants kept plaintiff upright by maintaining their grip and walking him to the door.  *Id*.  Plaintiff demanded a wheelchair, but at that point they were only a few feet from the door where there was a wheelchair.  *Id*. 0:23-0:42, 1:40-1:42.

     As they reached the exit, plaintiff pulled away from Tamayo's grasp, turned toward Marlowe in a sudden move and called him a "Bitch-ass nigger."  Tamayo Decl. ¶ 9, Ex. A Handheld Camera 0:41-0:48, Ex. C[2].  This movement by a Level 3 detainee, led Marlowe and Tamayo to believe plaintiff was going to assault them.  Tamayo Decl. ¶ 9; Marlowe Decl. ¶ 9.  Tamayo and Marlowe pushed plaintiff to the nearest wall, which was the glass exit door, and pinned him there to restrict his movement.  Tamayo Decl. ¶ 9, Ex. A Handheld Camera 0:41-0:48; Marlowe Decl. ¶ 9.  This is a standard tactical move to control an inmate.  Tamayo Decl. ¶ 9; Marlowe Decl. ¶ 9.  Marlowe and Tamayo then took plaintiff to the ground to gain control of his movements which is also a standard tactical move.  Tamayo Decl. ¶ 9, Ex. A Handheld Camera 0:41-0:48; Marlowe Decl. ¶ 9.

     Once on the ground Tamayo maintained control of plaintiff's left arm by applying a rear wrist lock, while Marlowe maintained control of plaintiff's right arm by applying a rear wrist lock.  Tamayo Decl. Ex. A Handheld Camera 0:48-0:54.  Another deputy assisted by controlling plaintiff's legs, and once plaintiff stopped moving, the defendants stopped applying the wrist and leg locks.  *Id*. 0:54-1:23.  The entire incident lasted approximately thirty seconds.  *Id*. 0:48-1:23.

     Defendants observed blood on the ground and saw that plaintiff had a cut over his right eye.  Tamayo Decl. ¶ 10; Ex. A Handheld Camera 1:08-1:23.  The cut seemed to have occurred when defendants pushed plaintiff against the glass exit door.  Tamayo

---

[2] Exhibit C to Tamayo's declaration consists of frame-by-frame pictures of this portion of the handheld video.

4

Decl. ¶ 10.  Plaintiff's wrists were in pain.  Docket No. 58 at 2.  Due to the ongoing disturbance in the housing unit, defendants resumed moving plaintiff outside of the unit and into the foyer.  Tamayo Decl. ¶ 10.  Plaintiff walked on both feet as he exited.  Tamayo Decl. Ex. A Handheld Camera 1:25-1:30.

Once outside the unit, plaintiff was seated in a wheelchair.  Handheld Camera 1:25-1:42.  The medical provider arrived and treated plaintiff.  Handheld Camera 1:45-20:55.  The medical provider used a medical liquid glue to bond and close the cut over plaintiff's eye and examined his right ankle, but found no objective evidence of injury and did not order a wheelchair.  Percy Decl. Ex. E; Tamayo Decl. ¶ 11; Marlowe Decl. ¶ 11; Handheld Camera 1:45-20:55.  Plaintiff was then taken to a booking cell and helped to a bench where his handcuffs were removed.  Tamayo Decl. Ex. A Handheld 19:13-20:55.

Plaintiff alleges that he suffered a fractured finger due to this incident.  Docket No. 18 at 45.  On June 9, 2019, the day of the incident, plaintiff did not complain of finger pain.  Tamayo Decl. Ex. A Handheld Camera 1:45-20:55.  An X-ray taken on June 28, 2019, revealed a small fracture at the corner of right ulnar bone.  *Id*.  It was recommended that he be treated with a wrist splint and anti-inflammatory medication.  *Id*.  However, an earlier X-ray of his hand in June 2019, showed no injuries and no fractured finger.  Docket No. 18 at 28.  A separate X-ray also showed that his ankle was normal.  *Id*.

## ANALYSIS

**Legal Standard**

The Due Process Clause of the Fourteenth Amendment protects a post-arraignment, pretrial detainee from the use of excessive force that amounts to punishment.  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979)); *cf*. *Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1043 (9th Cir. 1996) (4th Amendment reasonableness standard applies to allegations of use of excessive force against pre-arraignment detainee).  To prove an excessive force claim under § 1983, a pretrial detainee must show only that the "force purposely or knowingly

5

used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. "A court (judge or jury) cannot apply this standard mechanically." *Id*. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. at 396).

A nonexhaustive list of considerations that may bear on the reasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

Because the *Kingsley* standard applicable to excessive force claims by pretrial detainees is purely objective, it does not matter whether the defendant understood that the force used was excessive or intended it to be excessive. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).  A pretrial detainee can prevail by providing "'*objective* evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Id*. (quoting *Kingsley*, 576 U.S. at 397-98)).

In the operative first amended complaint (Docket No. 18), plaintiff alleges that as defendants took plaintiff away from his cell, plaintiff injured his ankle due to defendants' actions.  This allegation is refuted by the undisputed evidence.  Defendants are seen in the video walking plaintiff away from his cell at a normal pace, but plaintiff was attempting to plant his legs and stop the defendants from moving him.  Plaintiff also alleges that while he was pinned against the wall, defendants repeatedly slammed his face into the wall and lifted him off the ground.  This is also refuted by the video evidence.  Defendants can be seen placing plaintiff against the wall, but not slamming his face into the wall.  The video shows defendants standing extremely still while with plaintiff.

Defendants have met their burden in demonstrating that they did not knowingly or purposely use objectively unreasonable force against plaintiff. It is undisputed that plaintiff was yelling at defendants and ignoring their orders and as he continued to tense his body and plant his feet actively resisting the deputies' efforts to lead him away from his cell.

Defendants only used a minor amount of force, and any injury to plaintiff's face was minor. Assuming that plaintiff's leg was injured, defendants did not use objectively unreasonable force while walking plaintiff away from his cell while plaintiff was tensing his body and planting his legs. The force used was reasonable in response to plaintiff's efforts to resist. While plaintiff was later limping and stating that his foot was injured, it is undisputed that there was a period when plaintiff was walking normally. Defendants have met their burden, and plaintiff has failed to set forth specific facts showing that there is a genuine issue for trial for these allegations.

With respect to defendants' use of force while later escorting plaintiff out of the housing unit, it is undisputed that plaintiff was injured when defendants pushed him forcibly against the door and then forcibly took him to the ground. Plaintiff suffered a cut above his eyebrow that bled over his face and onto the floor, and his wrists and finger were in pain.

It is undisputed that plaintiff was while yelling at defendants he was receiving a response from the other Ad. Seg. inmates, who were also yelling, and defendants decided to remove plaintiff from the housing unit to calm the area down and get plaintiff seen by medical personnel. It is also undisputed that plaintiff's yelling was increasing and he attempting to stop walking and lower himself onto the floor. It is also undisputed that upon reaching the door, plaintiff forcefully and suddenly pulled away from Tamayo's grasp and turned towards Marlowe and called him a "bitch-ass nigger."

A review of the camera footage and the still images from the footage confirm that plaintiff forcefully pulled away from Tamayo's grip and turned towards Marlowe. It was at this point that defendants pushed plaintiff to the doorframe and then to the ground to

7

regain control. It is undisputed that defendants continued to hold plaintiff in a prone position, but they never struck plaintiff. The issue that remains is whether forcefully pushing plaintiff, who was handcuffed, to the door and ground after plaintiff had forcibly pulled away from Tamayo and turned towards Marlowe was objectively unreasonable.

Defendants argue that plaintiff's classification as a Level 3 inmate, combined with his aggressive movement towards Marlowe, justified the force they used. The incident only lasted thirty seconds before plaintiff was taken to a wheelchair and provided medical aid. In addition, plaintiff had been resisting being moved since he was first removed from his cell. Defendants also note that they were aware of plaintiff's propensity for violence due to several incidents with correctional deputies in the prior six months. For example, just prior to being placed in Ad. Seg., plaintiff had an outburst in court and was subsequently ordered to be taken in chains to court.

A review of the undisputed facts and the factors set forth in *Kingsley* support defendants' argument that the force used was reasonable. Even though plaintiff was handcuffed, he was a Level 3 detainee resisting an attempt to control him and quickly turning toward Marlowe, which would have allowed him to bite, kick or hit Marlowe with his head or body. Defendants did not strike plaintiff or use a weapon, but they did push him up against the door and took him to the ground. Defendants tempered their use of force by not striking plaintiff and once he was on the ground and had stopped resisting, freed plaintiff. The incident only lasted thirty seconds. Plaintiff presented a security issue by being uncooperative, and he was forcibly resisting and turning towards Marlowe in a clearly threatening manner. Defendants were reasonable in perceiving a threat by plaintiff's actions.

In addition, plaintiff only suffered minor injuries, which were promptly treated by medical staff. There was a cut on his head, but his ankle showed no serious injury after being examined by medical staff and a later X-ray. Plaintiff argues that his finger was fractured, as indicated in a June 28, 2019, X-ray; however, during the approximately 19 minutes of treatment by medical staff, plaintiff never mentioned any finger pain. In

addition, an earlier X-ray in June 2019 did not indicate a fractured finger.  Assuming that plaintiff did suffer a fractured finger from this incident that required a wrist splint and anti-inflammatory medication, defendants are still entitled to summary judgment pursuant to the legal standards and arguments set forth above.

All the above *Kingsley* factors demonstrate that defendants' actions were objectively reasonable in light of the specific facts and circumstances in this case.  The court notes that defendants had only a split second to consider the circumstances surrounding this incident and did not respond with excessive force.  *See Kingsley*, 567 U.S. at 397 ("A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.").  Defendants have met their burden, and plaintiff has failed to meet his burden in showing that the force was objectively unreasonable.  Summary judgment is granted for defendants.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  *Id*. at 205.  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*).  The court may exercise its discretion in

deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

The court has not found a constitutional violation, and even if there was a violation, defendants would be entitled to qualified immunity. It would not be clear to a reasonable deputy that twisting a detainee's wrist in these situations would be a constitutional violation, when the detainee was resisting, the twisting was used to gain compliance and the twisting ceased once the detainee complied. *See O'Neal v. Smith*, Case No. 11-803 DDP (MAN), 2015 WL 10938258, at *4, 8-9 (C.D. Cal. July 28, 2015) (deputy's use of force was objectively reasonable when he bent a detainee's wrist in to handcuff detainee who was resisting), *aff'd*, 714 F. App'x 754 (9th Cir. 2018).

Nor would it be clear to a reasonable deputy that pushing a detainee who was forcibly resisting and posed a threat against a doorframe and then to the ground would be a constitutional violation in these circumstances. *See Brown v. Baudino*, 840 F. App'x 263 (9th Cir. 2021) (brief use of pepper spray followed by immediate medical attention was objectively reasonable when detainee was a high security detainee and did not actively resist deputies but refused to get off the floor and went limp when they tried to lift him); *Brown v. Los Angeles Sheriff Dept.*, Case No. 15-0843 RMO (JEM), 2021 WL 1554921, at *7 (C.D. Cal. Mar. 29, 2021) (deputies' use of force was objectively reasonable when high risk detainee was verbally resisting, and then his knee gave out and deputies pushed him against a wall and then had to use force to put detainee in his cell). The facts of the instant case are not as egregious as the above cases.

The court notes that, in the prison context, roughly similar amounts of force have been found insufficient to support excessive force claims. *See Grant v. Palomares*, 2014 WL 466251, 17 (E.D. Cal., Feb. 5, 2014) (force was not excessive when defendant handcuffed inmate, pulled inmate's elbow back while pushing his torso, and then forcefully slammed inmate from seated position into a prone position) *aff'd*, 601 F. App'x 564, 565 (9th Cir. 2015); *Moore v. Machado*, 2009 WL 4051082, at *4-5 (N.D. Cal., Nov. 20, 2009) (throwing the inmate against a wall and bending or twisting his arm while tightly

handcuffing him was a de minimis use of force not actionable under the Eighth Amendment).  Defendants are entitled to qualified immunity.

## CONCLUSION

1. Defendants' motion for summary judgment (Docket No. 29) is **GRANTED**. Plaintiff's motions (Docket Nos. 61, 67) are **DENIED**.

2. The clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: January 24, 2022

　　　　　　　　　　　　　　　　　　　　　　　　　　 /s/ Phyllis J. Hamilton
　　　　　　　　　　　　　　　　　　　　　　　　　　PHYLLIS J. HAMILTON
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge